IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| VIASYS SERVICES, INC., | : | |
| formerly known as | : | |
| Transportation Safety Contractors, Inc., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 1:05-CV-1259-JOF |
| v. | : | |
| | : | |
| MC CURDY & STONE, et al., | : | |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

This matter is before the court on Defendants Jack Fisher and Agee Fisher LLC's motion to dismiss [24-1]; Defendants McCurdy & Stone, W. Phillip McCurdy, and John D. Stone's motion for summary judgment [33-1]; and Plaintiff's motion for oral argument [36-1].

**I.    Background**

    **A.    Procedural History**

Plaintiff, Viasys Services, Inc., filed suit against Defendants, McCurdy & Stone, W. Phillip McCurdy, John D. Stone, Jack Fisher, and Agee Fisher, LLC, on May 12, 2005, alleging causes of action of (1) conversion, (2) fraud and deceit and negligence/breach of fiduciary duty, and (3) civil conspiracy, arising out of the cashing of three checks totaling

$205,000. Plaintiff also seeks punitive damages and attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11. Plaintiff amended its complaint on August 8, 2005.

### B.     Facts from First Amended Complaint

Plaintiff is a general contractor for the construction of public works projects, including the installation of traffic management systems. First Amended Complaint, ¶ 1. Barry Hall is a former employee of Plaintiff and served as its President from October 29, 1996 through December 22, 2000. *Id.*, ¶ 8. Mr. Hall died on February 28, 2001. *Id.*, ¶ 8. McCurdy & Stone is a Georgia law firm with W. Phillip McCurdy and John D. Stone as partners in the firm. *Id.*, ¶¶ 2-4. Jack Fisher is a Certified Public Accountant and member of the accounting firm of Agee Fisher LLC. *Id.* ¶¶ 5-6. Non-party Display Solutions manufactures and distributes products for the transportation industry. *Id.*, ¶ 7.

Between June and December 1999, three corporate checks were drawn against the Viasys corporate bank account and were eventually negotiated by Defendants and placed in McCurdy & Stone's escrow account. *Id.*, ¶ 13. The checks, totaling $205,000 were made payable jointly to Display Solutions and McCurdy & Stone. *Id.*, ¶ 14. Mr. Hall and Jack Fisher caused the checks to be fraudulently issued. *Id.* ¶ 15. The checks were not authorized by Viasys, and Viasys did not have knowledge of their issuance. *Id.*

Agee Fisher, in its position as independent auditor and accountant to Viasys (at least through October 2000), facilitated the wrongful issuance of the checks. *Id.*, ¶ 16. McCurdy & Stone accepted, negotiated, and deposited the checks in its escrow account. *Id.*, ¶ 17.

2

McCurdy & Stone did not obtain a signature from Display Solutions before negotiating and depositing the checks. *Id.*

There were no authentic invoices from either Display Solutions or McCurdy & Stone pursuant to which the checks could have been issued. *Id.*, ¶ 18. Viasys did not owe Display Solutions – or any Defendant – the funds represented by the checks. *Id.* Display Solutions did not receive any of the funds from the checks. *Id.*, ¶ 19. Display Solutions did not have any knowledge or notice of the checks. *Id.*, ¶ 23.

McCurdy & Stone has never represented Display Solutions or Viasys. *Id.*, ¶ 20. Upon information and belief, Plaintiff avers that McCurdy & Stone disbursed the funds to Fisher for Fisher's benefit. *Id.*, ¶ 25. Fisher, McCurdy & Stone, W. Phillip McCurdy, and Agee Fisher received funds from the checks. *Id.*, ¶¶ 26-30.

Viasys first became aware of McCurdy & Stone's fraudulent acts on August 25, 2003 when Walter Rogers of Display Solutions informed Steven E. Palmer, the Chief Financial Officer of Viasys, that Mr. Rogers had no knowledge of the checks and Display Solutions was not owed any funds by Viasys. *Id.*, ¶ 31. Viasys first became aware of Agee Fisher's fraudulent acts on July 1, 2005, after Viasys filed its original complaint. *Id.*, ¶ 32. Defendant W. Phillip McCurdy did not disclose Defendant Fisher's actions until the original complaint was filed. *Id.*, ¶ 32.

On August 25, 2003, Mr. Palmer of Viasys sent a letter to W. Phillip McCurdy informing him that McCurdy & Stone had wrongfully deposited the checks into the firm's

3

escrow account. *Id.*, ¶ 33. Mr. Palmer requested a complete accounting for the funds. *Id.* Mr. McCurdy responded on September 3, 2003, and acknowledged that the funds were deposited into the firm's escrow account and then disbursed but stated that he would provide no more information than that on the basis of attorney-client privilege. *Id.*, ¶ 34. Mr. Palmer again requested an accounting on November 10, 2004. *Id.*, ¶ 35. On January 13, 2005, Plaintiff made a demand on McCurdy & Stone for a return of the $205,000 and $189,885.99 in interest. *Id.*, ¶ 36. Plaintiff filed the instant suit on May 12, 2005.

### C.     Contentions

Defendants Jack Fisher and Agee Fisher filed the instant motion to dismiss contending that Plaintiff filed its complaint outside the four-year statute of limitations period for fraudulent activities. Defendants McCurdy & Stone, W. Phillip McCurdy, and John D. Stone argue the same in their motion for summary judgment. Defendants also aver that the limitations period should not be tolled because Viasys knew or should have known of the existence of the alleged fraud at the time the checks were issued and therefore should not be able to toll the limitations period. Defendants alternatively argue that Plaintiff has not pled fraud with the requisite particularity under Rule 9(b). McCurdy & Stone, W. Phillip McCurdy, and John D. Stone ("the Law Firm Defendants") also argue that summary judgment should be granted in their favor on Plaintiff's claims of conversion, negligence, fraud, and conspiracy.

AO 72A
(Rev.8/82)

Plaintiff responds that because Mr. Hall was a member of the fraudulent conspiracy and because a fraudulent invoice was submitted in order to initiate the process of procuring the checks, the statute of limitations did not begin to run until Plaintiff learned that Display Solutions had not submitted the invoice in question, that is sometime in August 2003. Plaintiff also contends that whether it exercised reasonable diligence to uncover the fraud is a question for the jury. Plaintiff avers that it has pleaded fraud with particularity. Finally, Plaintiff argues that there is a dispute of fact as to whether the Law Firm Defendants were involved with Agee Fisher and Jack Fisher in a conspiracy to defraud Plaintiff.

## II.     Discussion

### A.     Statute of Limitations

The parties agree that Plaintiff's conversion, fraud and deceit, and conspiracy claims are governed by a four-year statute of limitations. *See* O.C.G.A. § 9-3-31 and § 9-3-32. The last of the three checks at issue was deposited on December 28, 1999, and thus, Plaintiff should have filed its complaint by December 28, 2003. Plaintiff, however, did not file suit until May 12, 2005. Plaintiff avers, however, that Defendants' actions constitute fraud which would toll the accrual of the statute of limitations period.

O.C.G.A. § 9-3-96 states, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of plaintiff's discovery of the fraud." This provision, however, must be strictly construed because it is an exception to the general statute

5

of limitations period. *See Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343, 344 (1978). The tolling provision "consists of three elements: (1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of a cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action despite his failure to do so within the time of the applicable statute of limitations." *Jim Walter Corp. v. Ward*, 245 Ga. 355, 356 (1980). Where, as here, actual fraud is the gravamen of the action, "the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered" and "[n]o independent fraudulent act is required to toll the statute." *Shipman v. Horizon Corp.*, 245 Ga. 808 (1980); *see also Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847 (1998). The failure to use reasonable diligence may be excused, however, "where there exists some relation of trust and confidence . . . between the party committing the fraud and the party who is affected by it . . . ." *Brown v. Brown*, 209 Ga. 620, 621 (1953).

Here, Plaintiff has alleged actual fraud of moral turpitude. Plaintiff further contends that it was not able to uncover the fraud because Agee Fisher, in its position as independent auditor and accountant to Viasys, facilitated the wrongful issuance of the checks. The checks drawn on the Viasys account were signed by two corporate officers of Viasys. Mr. Hall was one of the signators, and thus, because Plaintiff alleges he was a part of the conspiracy, the court discounts his knowledge. *See Clarence L. Martin, P.C. v. Chatham County Tax*

6

*Commissioner*, 258 Ga. App. 349, 350-51 (2002) (where officer of corporation departs from his scope of duties and is acting such that his private interests outweigh his corporate, the law will not impute his knowledge to the corporation). But Neal Gurr, Viasys' comptroller, co-signed the checks, and his knowledge can be imputed to the corporation because Plaintiff has not alleged that he was part of the conspiracy described in the complaint. *See Stein Steel & Supply Co. v. Franco*, 148 Ga. App. 186 (1978) ("knowledge of officers of a corporation is knowledge to that corporation and the corporation is bound thereby"). As such, the court concludes that Viasys, the corporation, had knowledge of the checks at the time they were drawn on Viasys' account.

The next step in the analysis is determining when Viasys knew or should have known that there was no debt to Display Solutions. Plaintiff alleges that Mr. Hall and Defendant Jack Fisher caused checks to be issued to Display Solutions and McCurdy & Stone despite the fact that no authentic invoice existed from Display Solutions. In its briefing, Plaintiff contends that Mr. Hall used a "fraudulent invoice" to initiate the issuance of the checks. Despite the fact that Plaintiff does not actually allege the device of a "fraudulent invoice" in its amended complaint, the court will accept this fact for the purposes of considering Defendants' motion to dismiss.

Plaintiff asserts that because Agee Fisher was its accountant for part of the relevant time period and in a confidential relationship with Plaintiff, Plaintiff was not required to investigate the "fraudulent invoice." The Supreme Court of Georgia addressed this issue in

7

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844 (1998), a legal malpractice claim. The court held that a confidential relationship does not relieve the plaintiff of any responsibility to discover fraud, but rather affects the extent to which a defendant has a duty to reveal fraud. *Id.* at 848. The court stated that the confidential relationship "imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care." *Id.*

The essential question here is when Plaintiff should have discovered the fraud through the exercise of reasonable due diligence in light of this confidential relationship with Agee Fisher. McCurdy & Stone does not figure into this confidential relationship analysis because Plaintiff avers in its complaint that McCurdy & Stone never performed any legal work for Plaintiff. Even if the court were to presume that Plaintiff should have undertaken – or did undertake – an audit in 1999 at the time the checks were issued and deposited, there is no indication that this audit would have uncovered the alleged fraud because if Agee Fisher was involved in the conspiracy, as alleged by Plaintiff, it would not have brought the conspiracy to the attention of Plaintiff. Thus, from the perspective of Plaintiff, it was presented a fraudulent invoice by Mr. Hall, Mr. Hall co-signed the checks, and allegedly involved Plaintiff's independent accountant in the conspiracy to funnel $205,000 out of Plaintiff's treasury. The court can construe no additional action of diligence that Plaintiff should have undertaken in order to detect the fraud.

When Plaintiff instigated a more thorough fraud audit in connection with unrelated billing disputes and the audit was performed by an independent auditor, Plaintiff did discover the issuance of these checks. Mr. Palmer, Plaintiff's Chief Financial Officer, sent out numerous inquiries, including the one to Display Solutions. Display Solutions then informed Plaintiff in August 2003 that it never received any funds from the three checks at issue. The court determines that it was at this time that Plaintiff discovered the fraud through a reasonable exercise of due diligence, and thus, Plaintiff has four years from August 2003 in order to file suit. As such, the court DENIES Jack Fisher and Agee Fisher's motion to dismiss and the Law Firm Defendants' motion for summary judgment on the basis of the statute of limitations defense.

### B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* A complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they mislead the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*See*, *e.g.*, *United States ex rel. Clausen v. Laboratory Corp.*, 290 F.3d 1301, 1310 (11th Cir. 2002). In its Amended Complaint, Plaintiff avers that Defendants and Mr. Hall set out to use

9

false means to procure the three checks at issue. The checks set forth the payees, the amount, and the date. Plaintiff also avers that to further the scheme, Defendants used the escrow account of McCurdy & Stone to negotiate and distribute the proceeds of the checks. The court finds that this description adequately places Defendants on notice as to the nature of the fraudulent scheme alleged by Plaintiff. As the court noted above, it agrees that the Amended Complaint is a bit sparse on the nature of the fraudulent invoice presented by Mr. Hall and Defendants to Plaintiff to procure the checks at issue. Plaintiff's lack of detail with respect to this aspect of the scheme may eventually be fatal to its fraud charges, but it is not so deficient as to render Plaintiff's complaint noncompliant with Rule 9(b).

AO 72A
(Rev.8/82)

### C. Motion for Summary Judgment

In their depositions, Mr. McCurdy and Mr. Fisher testified that the checks at issue were in payment for accounting services provided by Agee Fisher and incurred by Plaintiff and related companies. Mr. Fisher also testified that he met with Mr. Hall regarding the accounting fees owed by Plaintiff, and Mr. Hall agreed to the $205,000 figure. Mr. Hall also requested that the fees be paid through an attorney intermediary. Mr. Fisher then contacted Mr. McCurdy to discuss the arrangement. When he received the first check, Mr. McCurdy contacted Mr. Fisher, who informed him that Display Solutions was a client of Mr. Fisher's. Mr. McCurdy then understood – incorrectly, it turns out – that Display Solutions was a subsidiary of Plaintiff and that Mr. Hall had some affiliation with Display Solutions. Mr. Hall also informed Mr. McCurdy to disburse the checks at the instruction of Mr. Fisher. Mr. McCurdy testified that Mr. Fisher instructed him to disburse some fee – alternatively referred to as $2,500 and $1,400 – to McCurdy & Stone for performing the escrow services. Mr. Fisher testified that the other payments from the escrow account were for amounts due to Agee Fisher or to Jack Fisher as his share of distributions from Agree Fisher.

Plaintiff disputes that the checks were in payment for accounting fees incurred by Viasys and related companies. *See* Response to Statement of Facts, ¶ 2, and Affidavit of Steven E. Palmer, ¶¶ 6-7. Mr. Palmer also testified that Viasys did not have a business practice of "settling up" such fee obligations without the issuance of invoices. *Id.*, ¶¶ 8-9. In fact, Plaintiff points to Mr. McCurdy's deposition in which he testifies that only $50,000

11

of the $205,000 was actually disbursed to Agee Fisher. The remaining $155,000 was disbursed to various third parties at the direction of Mr. Fisher. Those third parties included Mr. Fisher's wife, his wife's uncle, and the individual from whom Mr. Fisher purchased a horse for his daughter.

    1.    Conversion

To prove conversion in Georgia, Plaintiff must show (1) title to the property or right of possession, (2) actual possession in the other party, (3) demand for return of property, and (4) refusal by the other party to return the property. *See*, *e.g.*, *Metzger v. Americredit Financial Services, Inc.*, 273 Ga. App. 453, 454 (2005).

There is at least a dispute of fact as to whether Plaintiff had the right of possession of the property because Mr. Palmer has testified that Plaintiff did not owe an accounting debt to Agee Fisher. Further, Plaintiff attached to its complaint a January 13, 2005 letter from Plaintiff's counsel to the Law Firm Defendants demanding repayment of the $205,000, and the Law Firm Defendants have not done so. However, it is undisputed that the Law Firm Defendants retained only a certain limited portion (perhaps $2,500 or $1,400) of the $205,000 and are not in actual possession of the remaining amounts of money. Thus, Plaintiff's conversion claim against the Law Firm Defendants can only stand with respect to that portion of the $205,000 the Law Firm Defendants retained. The court GRANTS IN PART AND DENIES IN PART the Law Firm Defendants' motion for summary judgment as to Plaintiff's conversion claim.

2. <u>Negligence</u>

The source of Plaintiff's negligence claim is unclear. In its Amended Complaint, Plaintiff alleges that as "a law firm Defendant McCurdy & Stone owed a duty of care and due diligence to Viasys in handling incoming funds and funds potentially to be deposited in its attorney escrow account constituting payments allegedly made by Viasys to McCurdy & Stone and a non-client payee." *See* Amended Complaint, ¶ 67. Plaintiff also avers that "[t]he Defendants breached their duty of care and due diligence by improperly appropriating and converting Viasys' funds, by failing and refusing to return the funds to Viasys and by failing to provide Viasys with any information to resolve the wrongful disbursement of the Checks." *Id.*, ¶ 70.

In its response to the Law Firm Defendants' motion for summary judgment, Plaintiff also argues that the Law Firm Defendants "aided and abetted Mr. Hall's breach of fiduciary duty to Viasys" by "failing to seek or obtain the signature or authorization from the payee of the checks, Display Solutions, before undertaking to negotiate and deposit the Checks." By doing so, "the Law Firm Defendants failed to exercise reasonable care and negligently handled and managed funds through Defendant McCurdy & Stone's escrow account." *See* Response, at 8-9.

Regardless of the manner in which Plaintiff couches its negligence claim, Plaintiff must show that the Law Firm Defendants owed some kind of duty to Plaintiff. *See*, *e.g.*, *McMann v. Mockler*, 233 Ga. App. 279, 279 (1998) (noting that legal malpractice claim is

13

essentially professional negligence action and that plaintiff must establish *inter alia* a "legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm"). Plaintiff, however, alleges in its complaint and still maintains that the Law Firm Defendants never represented Plaintiff. *See Graves v. Jones*, 184 Ga. App. 128, 130 (1987) (in legal malpractice claim, plaintiff must show employment of defendant attorney). As such, there can be no attorney-client relationship, and that duty cannot be the basis of Plaintiff's negligence claim. The court cannot construe any other basis upon which to conclude that McCurdy & Stone owed a duty to Plaintiff. As such, the court GRANTS the Law Firm Defendants' motion for summary judgment as to Plaintiff's negligence claim.[1]

---

[1]To the extent Plaintiff asserts that the Law Firm Defendants "aided and abetted" Mr. Hall's breach of fiduciary duty to Viasys, that claim must also fail. *See Munford v. Valuation Research Corp.*, 98 F.3d 604, 613 (11th Cir. 1996) (concluding that Georgia courts would not recognize aider and abettor liability to breaches of fiduciary duty). *See also Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156-57 (11th Cir. 2006) (same); *Monroe v. Board of Regents of University System of Georgia*, 268 Ga. App. 659, 664 (2004) (noting that Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty).

AO 72A
(Rev.8/82)

### 3. Fraud and Deceit

Again, the exact nature of Plaintiff's fraud and deceit claim against the Law Firm Defendants is unclear. It seems to the court that Plaintiff's fraud claim with respect to the Law Firm Defendants may relate more to the statute of limitations issue than to an actual fraud count. For example, Plaintiff recites in its statement of material disputed facts that it alleges in its complaint that the Law Firm Defendants "knowingly and falsely asserted the attorney-client privilege to prevent Viasys from discovering facts surrounding their and Defendants Fisher and Agee Fisher's involvement in the scheme to misappropriate funds from Viasys." *See* Statement of Material Disputed Facts, ¶ 5. "The Law Firm Defendants' failure to disclose Jack Fisher and Agee Fisher's role in or about September 2003 was to conceal facts surrounding the fraud and conspiracy to misappropriate funds of Viasys." *Id.*, ¶ 6. The Law Firm Defendants

> intentionally engaged in ongoing acts to conceal their fraud, including failing to contact the joint payee on the Checks, wrongfully asserting the attorney-client privilege, failing to disclose Defendants Fisher and Agee Fisher's role, failing to respond to Viasys' demands and failing to return the money to Viasys, with the intention of deceiving and misleading Viasys.

*Id.*, ¶ 13.

To the extent Plaintiff alleges that the Law Firm Defendants engaged in fraud to induce Plaintiff to miss the relevant statute of limitations and prevent Plaintiff from learning of the alleged fraud, the court finds that Plaintiff cannot establish any damage because the court has

15

determined above that in the exercise of reasonable due diligence, Plaintiff could only have discovered the fraud in August 2003, and thus, the statute of limitations was tolled.

Plaintiff, however, further alleges that the Law Firm Defendants did not have any authority to "accept, deposit and disburse the funds represented by the Checks" and "had no entitlement or right to the funds represented by the Checks." *Id.*, ¶¶ 7-8. The "Law Firm Defendants' complete and utter failure to contact the joint payee of the checks, Display Solutions, evidences their complicity and participation in the wrongful scheme to defraud Viasys." *Id.*, ¶ 9. Plaintiff further argues in its response to the Law Firm Defendants' motion for summary judgment that making the checks payable to both Display Solutions and McCurdy & Stone "was done to imply to Viasys that Defendant McCurdy & Stone was counsel for Display Solutions and therefore would be cashing the checks on their behalf, both constituting false representations." Response, at 11.

Under Georgia law, the elements of fraud are (1) a false representation, (2) scienter, (3) intention to induce plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff. *See*, *e.g.*, *Scarbrough v. Hallam*, 240 Ga. App. 829, 832 (1999). The court must agree with the Law Firm Defendants that Plaintiff has not identified any false representation or omission made by the Law Firm Defendants.

This does not end the inquiry, however, because Plaintiff has also raised a conspiracy claim against the Law Firm Defendants. Where a plaintiff has alleged underlying torts by a group of defendants engaged in a conspiracy, "the fact of conspiracy, if proved, makes any

16

actionable deed by one of the conspirators chargeable to all." *See Cook v. Robinson*, 216 Ga. 328, 329 (1980). As discussed in *Cook*, there is difficulty in proving a conspiracy. There, the court stated:

> [t]he conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances. The rule is to allow great latitude in setting out in the complaint the particular act upon which the conspiracy is to be inferred, and even to allow individual acts of the conspirators to be averred. To show conspiracy, it is not necessary to prove an express compact or agreement to the parties thereto. The essential element of the charge is the common design; but it need not appear that the parties met together either formally or informally, or entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or by writings they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design.

*Id.* at 329-30 (quotations and citations omitted).

The Law Firm Defendants argue that they were innocent bystanders to whatever scheme may have been concocted by Mr. Hall. They assert that Mr. Fisher – with whom they had done a great deal of business – asked if they would accept checks into their escrow account from a client of Mr. Fisher's. Mr. Fisher would then direct the Law Firm Defendants of the manner in which the funds were to be distributed. The Law Firm Defendants further aver that they had understood that the co-payee, Display Solutions, was affiliated in some manner with Mr. Hall.

On the other hand, Plaintiff asserts that the circumstantial evidence of the scheme they allege is sufficient evidence from which a jury could conclude that McCurdy & Stone was

17

involved in the conspiracy to defraud Viasys and, in fact, was an integral part of the conspiracy because without the funneling of the funds through McCurdy & Stone's escrow account, numerous red flags would have been raised such that Viasys could have immediately uncovered the scheme. Plaintiff asserts that McCurdy & Stone's failure to contact or otherwise even understand the role of Display Solutions as its joint payee when a reasonable attorney would have done so is evidence of fraudulent intent. Further, Plaintiff asserts that although McCurdy & Stone had supposedly been told that the $205,000 was in payment for accounting services, the funds eventually were disbursed to numerous entities, including Mr. Fisher's wife, the uncle of Mr. Fisher's wife, and an individual from whom Mr. Fisher had purchased a horse for his daughter. Again, Plaintiff asserts that a reasonable attorney would have questioned these distributions in light of the purported purpose of the escrow transaction, and the Law Firm Defendants' failure to do so is circumstantial evidence from which a jury could conclude that they were engaged in the fraudulent scheme.

Plaintiff's argument essentially boils down to an assertion that the Law Firm Defendants were so negligent in the manner in which they handled the escrowed funds that a jury could conclude they were actual participants in the fraudulent scheme alleged. The court, however, finds that a reasonable jury would need something more than evidence of mere negligence on the part of the Law Firm Defendants to conclude they were part of the conspiracy. Beyond these acts of alleged negligence, Plaintiff proffers no evidence to indicate the Law Firm Defendants were associated with the scheme. Whether the fee paid to

the Law Firm Defendants was $1,400 or $2,500, neither figure is so out of the ordinary range for fees that a presumption could arise that McCurdy & Stone received some benefit in participating in the scheme. As such, the court GRANTS the Law Firm Defendants' motion for summary judgment as to Plaintiff's fraud and conspiracy claims. The only claim remaining against the Law Firm Defendants, therefore, is the conversion claim.

### III. Conclusion

The court DENIES Defendants Jack Fisher and Agee Fisher LLC's motion to dismiss [24-1]; GRANTS IN PART AND DENIES IN PART Defendants McCurdy & Stone, W. Phillip McCurdy, and John D. Stone's motion for summary judgment [33-1]; and DENIES AS MOOT Plaintiff's motion for oral argument [36-1].

The parties are DIRECTED to file a consolidated pretrial order or any additional motions for summary judgment within thirty (30) days from the date of this order.

**IT IS SO ORDERED** this 11th day of April 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE